UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAEID ASADOLLAHI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 C 2039 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| SPINECRAFT, LLC and | ) | |
| DR. WAGDY ASAAD, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Saeid Asadollahi, a non-U.S. citizen, worked for Defendant SpineCraft, LLC ("SpineCraft") from August 2015 until May 6, 2019. Over the course of nearly four years, Asadollahi attempted to petition for a green card with either SpineCraft's sponsorship or on his own but eventually left the company after facing allegedly discriminatory treatment. Asadollahi brings claims against SpineCraft for citizenship status and national origin discrimination under the Illinois Human Rights Act (the "IHRA"), 775 Ill. Comp. Stat. 5/1 *et seq.* (Counts I and II) and breach of contract (Count IV). He also brings a claim for violation of the Illinois Wage Payment and Collection Act (the "IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.* (Count III) against SpineCraft and its president, Defendant Dr. Wagdy Asaad. SpineCraft and Dr. Asaad now bring a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [22]. The Court denies in part and grants in part Defendants' motion to dismiss. Because the determination of whether a constructive discharge occurred is fact-intensive, Asadollahi has adequately pleaded enough facts to proceed on his claims for citizenship status and national origin discrimination under the IHRA. However, the amended complaint fails to adequately plead that Asadollahi was entitled to owed, earned wages for

purposes of his IWPCA claim. And, because Asadollahi does not plead adequate consideration to support the alleged oral contract he had with SpineCraft with respect to his immigration attorney's fees, a bonus, or an annual raise, he cannot proceed on his contract claim.

## BACKGROUND[1]

Asadollahi, an Iranian citizen, began working for SpineCraft as a product development engineer in August 2015. Prior to starting, he discussed a visa sponsorship with Dr. Asaad, the president of the company, who stated that the normal process for non-citizen employees was to apply first for a H1-B visa and then, after the H1-B period elapsed, to apply for a green card.

After the President signed an executive order banning Iranian citizens from traveling to the United States in January 2017, Asadollahi asked for a meeting with Dr. Asaad to discuss his visa and green card. Dr. Asaad agreed to direct the company's attorney to begin the process for a H1-B work visa and a green card immediately thereafter. SpineCraft applied for the visa on behalf of Asadollahi in May 2017. A month later, the company's attorney asked Asadollahi to submit the necessary documents for a green card application. In August of that same year, Asadollahi discovered SpineCraft had yet to start his green card application. He then met with Dr. Asaad and Ami Akallal-Asaad, the vice president of the company, who explained that SpineCraft would start the green card application process for Asadollahi after it received final decisions for other employees' pending green card applications. They reasoned that SpineCraft could not file a new application at that time because of the size of the company and the number of green card cases still pending. Asadollahi continued to follow up and, in 2018, asked again to meet with Dr. Asaad to discuss his green card application once again because of a bill introduced

---

[1] The Court takes the facts in the background section from Asadollahi's amended complaint and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

in Congress that would increase the processing time for green card applications for foreign workers.

Given SpineCraft's inaction on his requests, Asadollahi retained his own immigration attorney. He offered an alternative to the company, suggesting he would be willing to apply for an EB2-NIW visa that does not require company sponsorship. Dr. Asaad agreed to pay Asadollahi's immigration attorney's fees in exchange for Asadollahi continuing to work for the company. Asadollahi's attorney exchanged several emails with Dr. Asaad to arrange for the payment of his fees in two installments: one in December 2018 and one in March 2019. Dr. Asaad agreed to the payment schedule and indicated that the two payments would not be an issue so long as the fees were comparable to what SpineCraft typically paid for similar petitions.

Dr. Asaad did not make the payments, however. Instead, on March 27, 2019, Dr. Asaad presented Asadollahi an Immigration Green Card Sponsorship and Repayment Agreement (the "Repayment Agreement") for his signature. The Repayment Agreement required Asadollahi to pay back any costs related to the immigration process to SpineCraft unless he remained at SpineCraft for at least two years after he received his green card. Asadollahi refused to sign the agreement, as it deviated from the parties' previously agreed to terms. Dr. Asaad denied accepting the previous agreement in an email to Asadollahi in April 2019, stating he only "agreed later to consider covering this costs . . . on the understanding that you will not receive salary increase in the beginning of 2019." Doc. 20 ¶ 32. Asadollahi, in fact, did not receive a salary increase in 2019, nor did he receive a bonus for his work in 2018, both of which SpineCraft typically gave its employees. Although he did not receive his annual raise, Asadollahi nevertheless had to pay his attorney's fees.

When Asadollahi complained about his treatment in a meeting with Akallal-Asaad and Jayson Varghese, a R&D manager, Akallal-Asaad stated he needed to work more because he was not a citizen. This was not an isolated occurrence, as Akallal-Asaad made a similar comment to Asadollahi when he first started at SpineCraft, telling him he had to work more than U.S. citizen employees in order to succeed at the company. Asadollahi further learned that SpineCraft offered a similarly situated U.S. citizen a higher salary, despite the fact that they both had substantially similar educational backgrounds and skill sets.

In light of the discriminatory treatment and Dr. Asaad's requirement that he sign the Repayment Agreement in order to have his attorney's fees covered by SpineCraft, Asadollahi faced "an irremediable breakdown" in his working relationship with SpineCraft. *Id.* ¶ 41. Ultimately, this caused Asadollahi to quit his job at SpineCraft on May 6, 2019.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

ANALYSIS

I.    **IHRA Claims (Counts I and II)**

SpineCraft first moves to dismiss Asadollahi's claims of citizenship status and national origin discrimination under the IHRA. "Illinois courts apply the federal Title VII framework to claims of discrimination made under the Illinois Human Rights Act." *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017). To survive a motion to dismiss, Asadollahi "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [his citizenship status and national origin]." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008).

SpineCraft argues that Asadollahi has failed to allege he suffered an adverse employment action or, in the alternative, that he has not alleged similarly situated employees were treated more favorably, citing to a version of the *McDonnell Douglas* standard. Doc. 23 at 4–5. But this asks too much of Asadollahi at this pleading stage; "[e]mployers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014). In fact, the Supreme Court "has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *see also Carlson*, 758 F.3d at 827 ("The plaintiff is not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination under the 'indirect' method of proof."). Therefore, the fact that Asadollahi has not included allegations of similarly situated employees treated more favorably does not affect the Court's analysis at the pleading stage.

Instead, the Court focuses on whether Asadollahi has sufficiently alleged an adverse employment action. Asadollahi contends that he suffered a constructive discharge because SpineCraft refused to pay for his immigration attorney's fees and created an intolerable workplace. The parties do not dispute that constructive discharge amounts to an adverse employment action, *see Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011), but they disagree as to whether Asadollahi has sufficiently alleged that SpineCraft constructively discharged him. Constructive discharge occurs when an employee's working conditions become "so intolerable that a reasonable person would have felt compelled to resign." *Patton v. Keystone RV Co.*, 455 F.3d 812, 818 (7th Cir. 2006) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)). A workplace does not become intolerable or unbearable merely because a "prospect of discharge lurks in the background." *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333 (7th Cir. 2004). Constructive discharge may take two different forms: "(1) an employee quits due to alleged discriminatory harassment, which requires the employee to establish that his working conditions were even more egregious than that required for a hostile work environment or (2) when the employer acts in a manner that communicates to a reasonable employee that his employment will be terminated." *Michael v. United Parcel Serv. Freight, Inc.*, No. 13 C 7212, 2015 WL 3396678, at *8 (N.D. Ill. May 26, 2015) (citing *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010), and *Fischer v. Avanade, Inc.*, 519 F.3d 393, 409 (7th Cir. 2008)). Both forms require allegations that the workplace has become intolerable. *Chapin*, 621 F.3d at 679 (citations omitted).

The question of whether a constructive discharge occurred is fact-intensive, with dismissal inappropriate "where the situation is identified and unlawful motivation alleged." *Carlson*, 758 F.3d at 830. Here, Asadollahi alleges Akallal-Asaad made discriminatory

comments to him since he first started at SpineCraft, declaring he had to work more than U.S. citizen employees in order to succeed in the company. The amended complaint further alleges the company put continued pressure on Asadollahi to sign the Repayment Agreement and, coupled with the hostile comments, indicated it would terminate his employment unless he signed that agreement. Although a close call, drawing all inferences in Asadollahi's favor, as required at this pleading stage, Asadollahi has sufficiently pleaded facts to suggest that SpineCraft constructively discharged him. *See Carlson*, 758 F.3d at 830 ("The conditions Carlson described in her complaint may not ultimately qualify as intolerable, but we cannot say so definitively at the pleading stage, which (we stress again) is before any evidence is required."); *Brownlee v. Cath. Charities of the Archdiocese of Chicago*, No. 16-CV-00665, 2017 WL 770997, at *4–6 (N.D. Ill. Feb. 28, 2017) (constructive discharge allegations provided the defendant with sufficient notice to allow them to proceed to discovery). SpineCraft certainly may raise its argument that Asadollahi cannot prove constructive discharge at the close of discovery.

## II.     IWPCA Claim (Count III)

Next, Defendants seek dismissal of the IWPCA claim, arguing that Asadollahi has failed to allege they owed him any wages. To state a claim under the IWPCA, Asadollahi must plead that Defendants owe him wages or final compensation under an employment contract or agreement. 820 Ill. Comp. Stat. 115/2; *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016). The IWPCA defines "wage" narrowly as "compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." 820 Ill. Comp. Stat. 115/2.

Defendants contend that Asadollahi has not sufficiently pleaded any entitlement to a bonus or an annual raise, nor demonstrated he had an agreement with SpineCraft regarding payment of his immigration attorney's fees. Asadollahi responds that he had an implicit agreement with Defendants for them to pay his immigration attorney's fees, as well as an agreement to provide him a bonus and annual raise. Illinois courts have held that "[a]n employment agreement need not be a formally negotiated contract" and requires only the manifestation of mutual assent. *Landers-Scelfo v. Corp. Off. Sys., Inc.*, 356 Ill. App. 3d 1060, 1067–68 (citing *Zabinsky v. Gelber Grp., Inc.*, 347 Ill. App. 3d 243, 249 (2004)). Thus, for purposes of his IWPCA claim, Asadollahi need not allege any bargained-for exchange of consideration. *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 660 (N.D. Ill. 2012).

Here, Asadollahi first contends that SpineCraft's past practice of providing annual raises and bonuses constitutes an agreement sufficient to support an IWPCA claim. But an employer's past practices do not amount to an agreement or promise to an employee on which the employee can recover under the IWPCA. *Arias v. CITGO Petroleum Corp.*, No. 17-cv-08897, 2019 WL 4735391, at *9 (N.D. Ill. Sep. 27, 2019) (prior general practices in calculating bonuses did not establish entitlement to a bonus for IWPCA purposes). Therefore, Asadollahi cannot pursue his IWPCA claim with respect to payment of a bonus or annual raise. *See Stark v. PPM Am., Inc.*, 354 F.3d 666, 672 (7th Cir. 2004) (the plaintiff did not have a claim under the IWPCA because he had "no employment contract setting out the terms of his bonus").

As for payment of Asadollahi's immigration attorney's fees, Defendants argue that the IWPCA's "narrow" definition of "wages" does not encompass attorney's fees. Courts have held that the IWPCA's definition of "wages" includes earned wages but excludes indirect compensation. *Enger*, 812 F.3d at 568 (definition of "wages" excluded tips and other forms of

indirect compensation). Here, the payment of the attorney's fees would not have been made directly to Asadollahi, but rather to a third party (his immigration attorney). As such, the payment of attorney's fees does not qualify as compensation under the IWPCA. *See id.* at 569 ("[A]n employee suing under the IWPCA must seek to collect compensation owed by his employer, and not third parties."). Therefore, Asadollahi has not sufficiently alleged that Defendants owe him wages or other compensation that he can recover under the IWPCA.

### III. Breach of Contract Claim (Count IV)

To assert a claim for breach of contract under Illinois law, a party must allege: (1) the existence of a valid contract; (2) substantial performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015). SpineCraft argues Asadollahi has failed to sufficiently allege the existence of a valid enforceable contract, or, in the alternative, that the contract terms are not sufficiently definite.[2]

Under Illinois law, "a legally enforceable contract is an exchange, and the elements of a contract include offer, acceptance, and consideration." *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 742 (N.D. Ill. 2011) (citing *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 26 (2005)). "It is a basic tenet of contract law that in order for a promise to be enforceable against the promisor, the promisee must have given some consideration for the promise." *Vassilkovska*, 358 Ill. App. 3d at 26. "Consideration" is defined as a bargained-for exchange, whereby one party receives a benefit or the other party suffers a detriment. *Id*.

---

[2] In their motion, Defendants also state that the breach of contract claim fails because Asadollahi did not substantially perform his contractual duties. But Defendants did not expand on this basis for dismissal, so similarly the Court will not address the argument.

SpineCraft argues that Asadollahi fails to allege that any promise that SpineCraft would pay his immigration attorney's fees and a 2018 bonus, as well as give him a raise in 2019, was supported by consideration. Asadollahi asserts that, with regards to the annual raise and bonus, "continued services and performing additional work during the audit period constituted sufficient consideration under the contract." Doc. 26 at 13. Asadollahi contends that the contract at issue is an oral agreement concerning his annual raise and an alleged bonus, not the employment and non-competition agreement with SpineCraft that Defendants attached to their motion to dismiss that sets forth the terms regarding eligible annual performance bonuses. Even disregarding the parties' written agreement, nowhere in the amended complaint does Asadollahi allude to an oral agreement concerning bonuses and annual raises, instead only referring to "past practice" to allege an operative contract. As with the IWPCA claim, "a practice does not create an obligation under the principles of contract law." *Brines v. XTRA Corp.*, 304 F.3d 699, 703 (7th Cir. 2002) (rejecting the plaintiff's attempt to use the employer's practice "not to explicate a contract but to create one").

With regards to Asadollahi's attorney's fees, he alleges he bargained for SpineCraft's promise to pay for his attorney's fees in exchange for his promise to continue to work for SpineCraft rather than look for a different employer who would sponsor his green card petition.[3] "Consideration cannot be something that the promisor is already obliged to give the promisee; it must be something additional or new." *Maroon Soc'y v. Unison Consulting Inc.*, No. 19 C 05117, 2020 WL 5076688, at *7 (N.D. Ill. Aug. 26, 2020). Here, Asadollahi does not allege that he gave anything new in exchange for SpineCraft's promise to pay his attorney's fee but instead

---

[3] Asadollahi further claims in his response that the Court could infer consideration from the fact that he did not receive the annual raise. But this argument is unpersuasive, given that he insists that he never agreed to forego his raise in exchange for payment of the attorney's fee and instead seeks to recover for SpineCraft's failure to give him that raise.

merely agreed to continue working for SpineCraft. *Chi. Coll. of Osteopathic Med. v. George A. Fuller Co.*, 776 F.2d 198, 208 (7th Cir. 1985) ("Under the preexisting duty rule, agreement to do what one is contractually obligated to do is not valid consideration."). Thus, Asadollahi has not pleaded adequate consideration to support the alleged oral contract to pay for his attorney's fees, a bonus, or an annual raise, as required to support his breach of contract claim.[4]

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [22]. The Court dismisses Asadollahi's IWPCA and breach of contract claims (Counts III and IV) without prejudice.

Dated: February 23, 2021

                                                                SARA L. ELLIS
                                                               United States District Judge

---

[4] Because the amended complaint fails to plead adequate consideration to support the existence of a contract, the Court need not address the definiteness of any contract terms.