UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAEID ASADOLLAHI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 C 2039 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| SPINECRAFT, LLC and | ) | |
| DR. WAGDY ASAAD, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Saeid Asadollahi, a non-U.S. citizen, worked for Defendant SpineCraft, LLC ("SpineCraft") from August 2015 until May 6, 2019. Over the course of nearly four years, Asadollahi attempted to petition for a green card with either SpineCraft's sponsorship or on his own but eventually left the company after facing allegedly discriminatory treatment. The Court previously found that Asadollahi's claims of citizenship status and national origin discrimination against SpineCraft under the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/1 *et seq.*, could proceed but dismissed his claims for violation of the Illinois Wage Payment and Collection Act ("IWPCA") against SpineCraft and its president, Dr. Wagdy Asaad and for breach of contract against SpineCraft. Doc. 28. Asadollahi filed a second amended complaint, repleading the IHRA discrimination claims (Counts I and II) and the IWPCA claim (Count III). Defendants now seek dismissal of the IWPCA claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Asadollahi once again has failed to adequately plead an entitlement to

payments for an annual salary raise, bonus, and immigration attorney's fees for purposes of his IWPCA claim, the Court dismisses the IWPCA claim with prejudice.[1]

## BACKGROUND[2]

Asadollahi, an Iranian citizen, began working for SpineCraft as a product development engineer in August 2015. During the hiring process, Asadollahi and Dr. Asaad, the company president, discussed the normal process for non-citizen employees, which was first to apply for a H1-B visa and then, after the H1-B period elapsed, to apply for a green card.

After President Trump signed an executive order banning Iranian citizens from traveling to the United States in January 2017, Asadollahi again met with Dr. Asaad to discuss his visa and green card. Dr. Asaad agreed to direct the company's attorney to begin the process for a H1-B work visa and a green card. In May 2017, SpineCraft applied for the visa on behalf of Asadollahi, but in August of that same year, Asadollahi discovered SpineCraft had yet to start his green card application. SpineCraft explained that it could not sponsor Asadollahi for permanent residency until it received final decisions for other employees' pending green card applications. In November 2018, Asadollahi met with Dr. Asaad, informing Dr. Asaad that he retained his own immigration attorney. Dr. Asaad exchanged several emails with Asadollahi's attorney and agreed to pay for the attorney's fees in two installments if the fees were comparable to what SpineCraft typically paid for similar petitions.

---

[1] In connection with their motion to dismiss, Defendants also asked that the Court stay discovery on the IWPCA claim. Because the Court resolves the motion to dismiss in Defendants' favor, the request to stay discovery is moot.

[2] The Court takes the facts in the background section from Asadollahi's second amended complaint and the exhibits attached thereto and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

However, instead of making the payments, on March 27, 2019, Dr. Asaad requested that Asadollahi sign an Immigration Green Card Sponsorship and Repayment Agreement (the "Repayment Agreement"). The Repayment Agreement required Asadollahi to pay back any costs related to the immigration process to SpineCraft unless he remained at SpineCraft for at least two years after he received his green card. Asadollahi refused to sign the agreement because it differed from the parties' initially agreed upon terms. In April 2019, Dr. Asaad denied the previous agreement in an email to Asadollahi, stating that he only "agreed later to consider covering these costs . . . on the understanding that [Asadollahi] will not receive salary increase in the beginning of 2019." Doc. 30 ¶ 33. Asadollahi did not receive a salary increase in 2019, although he received a salary increase every previous year of his employment. SpineCraft typically gave its employees salary increases of approximately 1.065% to 1.075% during Asadollahi's time with SpineCraft. Despite not receiving an annual raise, Asadollahi had to pay his attorney's fees out of pocket.

In addition to typically giving annual raises to its employees, SpineCraft also rewarded its employees' work with annual bonuses. Asadollahi's employment agreement with SpineCraft provided that "[e]mployee is eligible for an annual performance bonus and spot bonus, up to 10% of his base annual salary based on the performance of the company and the Employee personal performance objectives as determined by the annual performance evaluation." *Id.* ¶ 37. In 2018, despite consistently receiving 3s and 4s on his performance review, Asadollahi did not receive a bonus. His performance review scores were in line with previous years when he did receive a bonus.

Ultimately Asadollahi faced "an irremediable breakdown" in his working relationship with SpineCraft, most notably because of Dr. Asaad's insistence that Asadollahi sign the

3

Repayment Agreement in order to have his attorney's fees covered by SpineCraft. *Id.* ¶ 45. Asadollahi quit his job at SpineCraft on May 6, 2019, and this suit followed.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

To state a claim under the IWPCA, Asadollahi must plead that Defendants owe him wages or final compensation under an employment contract or agreement. 820 Ill. Comp. Stat. 115/2; *Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016). The IWPCA defines "wage" narrowly as "compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." 820 Ill. Comp. Stat. 115/2. Illinois courts have held that "[a]n employment agreement need not be a formally negotiated contract" and requires only the manifestation of mutual assent. *Landers-Scelfo v. Corp. Off. Sys., Inc.*, 356 Ill. App. 3d 1060, 1067–68 (2005) (citing *Zabinsky v. Gelber Grp., Inc.*, 347 Ill. App. 3d 243,

4

249 (2004)). Thus, for purposes of his IWPCA claim, Asadollahi need not allege any bargained-for exchange of consideration. *Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 660 (N.D. Ill. 2012).

The Court previously found Asadollahi's allegations that SpineCraft's past practice of providing annual raises and bonuses did not amount to an agreement or promise on which he could recover under the IWPCA, Doc. 28 at 8, and that the payment of attorneys fees did not qualify for compensation under the IWPCA, *id.* at 8–9. In repleading the IWPCA claim, Asadollahi has provided additional details as to why his claims for an annual salary raise and bonus and payment of attorney's fees fall within the IWPCA. Asadollahi continues to argue that he had an implicit agreement with Defendants for them to pay him a bonus, an annual raise, and his immigration attorney's fees. Defendants maintain, however, that Asadollahi's allegations continue to fall short.

Initially, Asadollahi includes additional detail with respect to SpineCraft's past practice, alleging that he consistently received a 1.065% to 1.075% raise every year during his employment and that he had received bonuses with reviews similar to the reviews he received in 2018. He contends that these additional details show that the parties assented to payment of a bonus in 2018 and salary increase in 2019. *See Landers-Scelfo*, 356 Ill. App. 3d at 1058–59 ("[E]mployers and employees can manifest their assent to conditions of employment by conduct alone."). But while conduct alone may indicate mutual assent, this does not change the Court's conclusion that an employer's past practices do not amount to an agreement or promise to an employee on which the employee can recover under the IWPCA. *See Arias v. CITGO Petroleum Corp.*, No. 17-cv-08897, 2019 WL 4735391, at *9 (N.D. Ill. Sep. 27, 2019) (prior general practices in calculating bonuses did not establish entitlement to a bonus for IWPCA purposes).

And that is all that Asadollahi alleges: that the past practice establishes an agreement for payment of a raise and bonus in 2018. Similarly, Dr. Asaad's comment about Asadollahi forgoing a raise in 2019 if SpineCraft paid his immigration attorney costs simply reflects SpineCraft's past practice. And because Asadollahi did not agree to Dr. Asaad's proposed terms, the Court cannot find mutual assent to support an entitlement to the salary increase. *See Brand v. Comcast Corp.*, No. 12 CV 1122, 2013 WL 1499008, at *5 (N.D. Ill. Apr. 11, 2013) (no agreement for IWPCA claim where the defendant did not assent to the alleged terms).

Further, Asadollahi's employment agreement does not provide the requisite entitlement to a bonus. *Cf.* 56 Ill. Adm. Code § 300.500(a) ("An employee has a right to an earned bonus when there is an unequivocal promise by the employer and the employee has performed the requirements set forth in the bonus agreement between the parties and all of the required conditions for receiving the bonus set forth in the bonus agreement have been met."). It provides only that Asadollahi would be "eligible for an annual performance bonus, up to 10% of his base annual salary based on the performance of the company and on the Employee personal performance objectives as determined by the annual performance evaluation." Doc. 30 ¶ 37. This language does not create an unequivocal entitlement of a bonus but instead includes certain conditions that make the award of that bonus discretionary. *See Hess v. Bresney*, 784 F.3d 1154, 1162 (7th Cir. 2015) ("Eligibility, of course, is no guarantee."); *McLaughlin v. Sternberg Lanterns, Inc.*, 395 Ill. App. 3d 536, 544 (2009) ("If no such unequivocal promise was made, then the employee is not entitled to any part of the bonus pursuant to section 2 of the [IWPCA]."); 56 Ill. Adm. Code 300.500(d) ("A discretionary bonus is when the terms associated with the earning of the bonus are indefinite or uncertain, such as bonus being upon a positive evaluation of the 'employee's performance' and not when the earning of a bonus is based on

6

objective factors such as length of service, attendance or sign-on or relocation incentives."). Therefore, the employment agreement does not provide a basis for Asadollahi's IWPCA claim.

As for the payment of Asadollahi's immigration attorney's fees, the Court previously found that such payment did not qualify as compensation under the IWPCA because SpineCraft would have paid the fees to a third party, not directly to Asadollahi. Doc. 28 at 8–9 (citing *Enger*, 812 F.3d at 568 (definition of "wages" excluded tips and other forms of indirect compensation, meaning that "an employee suing under the IWPCA must seek to collect compensation owed by his employer, and not third parties")). Nothing Asadollahi argues in connection with the second amended complaint changes this conclusion. Payment of the attorney's fees was not part of Asadollahi's compensation, regardless of SpineCraft's past practices of sponsoring other employees for visas and green cards, and Asadollahi took it upon himself to hire the immigration attorney. Although Dr. Asaad initially agreed with the immigration attorney to a payment schedule, such an indirect agreement, as discussed above, does not suffice. *See Enger*, 812 F.3d at 569. Therefore, Asadollahi has not sufficiently alleged that Defendants owe him wages or other compensation that he can recover under the IWPCA. Because Asadollahi has had several opportunities to plead his IWPCA claim and the Court finds that additional opportunity to amend would be futile, the Court dismisses that claim with prejudice. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 734–35 (7th Cir. 2014) (affirming dismissal with prejudice of first amended complaint after initial complaint was dismissed without prejudice); *Pirelli Armstrong Tire Corp., Retiree Med. Benefits Tr. v. Walgreen Co.*, No. 09 C 2046, 2010 WL 624709, at *1 (N.D. Ill. Feb. 18, 2010) (dismissing amended complaint with prejudice after previous dismissal of ICFA and unjust enrichment claims without prejudice), *aff'd*, 631 F.3d 436 (7th Cir. 2011).

**CONCLUSION**

For the foregoing reasons, the Court grants Defendants' partial motion to dismiss [33]. The Court dismisses Asadollahi's IWPCA claim (Count III) with prejudice.

Dated: August 30, 20201

                                                SARA L. ELLIS
                                                United States District Judge